IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BETTIE BRISCO,                          §
                                        §
            Plaintiff,                  §
                                        §
V.                                      §            No. 3:11-cv-3534-BN
                                        §
CAROLYN W. COLVIN,                      §
Acting Commissioner of Social Security, §
                                        §
            Defendant.                  §

## MEMORANDUM OPINION AND ORDER

Plaintiff Bettie Brisco seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

### Background

Plaintiff alleges that she is disabled due to a variety of ailments, including deep vein thrombosis, arthritis, diabetes, and high blood pressure. *See* Administrative Record [Dkt. Nos. 11 & 12] ("Tr.") at 26, 34. After her application for disability benefits was denied initially, *see id.* at 64, and on reconsideration, *see id.* at 70, Plaintiff requested a hearing before an administrative law judge ("ALJ"), *see id.* at 73. That hearing was held on March 24, 2010. *See id.* at 22-60. At the time of the hearing, Plaintiff was sixty-one years old. *See id.* at 47. She is a high school graduate and has past work experience as a gauge assembler. *See id.* at 18, 27, 47. Plaintiff has not engaged in substantial gainful activity since March 23, 2009. *See id.* at 15, 27.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 19. Although the medical evidence established that

Plaintiff suffered from hypertension, peripheral artery disease, diabetes mellitus, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 15. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as a gauge assembler. *See id.* at 18.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed. *See id.* at 1. Plaintiff then filed this action in federal district court. *See* Dkt. No. 1.

Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ's reliance on noncompliance when making the disability determination is not supported by substantial evidence and does not comply with the relevant Social Security Ruling and (2) the ALJ's credibility findings are not supported by substantial evidence.

The Court determines that the hearing decision must be affirmed in all respects.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not

reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not

4

hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff's two issues on appeal – concerning Plaintiff's alleged non-compliance with medical treatment and credibility – are closely related. Plaintiff first contends that the ALJ's findings of noncompliance with treatment were not supported by substantial evidence because the ALJ failed to consider whether Plaintiff's noncompliance was justified by an inability to afford treatment and the side effects of prescribed treatment. *See* Dkt. No. 17-1 at 3, 9-14; Dkt. No. 20 at 1-6.

Under the social security regulations, a claimant "must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 416.930(a). The failure to follow a prescribed course of treatment "without a good reason" precludes a finding of disability. *Id.* § 416.930(b); *see also id.* § 404.1530(b). SSR 82-59 requires the ALJ to develop the record to determine whether the claimant justifiably failed to undergo the treatment prescribed. *See* SSR 82-59,

1982 WL 31384, at *2 (S.S.A. 1982). If the evidence suggests that the claimant does not have a good reason for failing to follow the prescribed treatment, the claimant must be informed of that fact and of its effect on the eligibility for benefits. *See id.* at *5. The claimant must be afforded an opportunity to comply with the prescribed treatment or show "justifiable cause" for failing to do so. *Id.* However, the procedures set forth in SSR 82-59 "only apply to claimants who would otherwise be disabled within the meaning of the Act." *Barrance v. Colvin,* No. 3:12-cv-71-BN, 2013 WL 1842286, at *7 (N.D. Tex. May 2, 2013); *Hawkins v. Astrue*, No. 3:09-cv-2094-BD, 2011 WL 1107205, at *2-*3 (N.D. Tex. Mar. 25, 2011).

The ALJ's decision contained several references to Plaintiff's noncompliance with medical treatment. The first was by the doctor who performed the consultive examination, who noted that Plaintiff was not compliant with her treatment or medications and that she had stopped taking her medications three weeks prior to the exam because she could not afford them. *See* Tr. at 17; *see also id.* at 215. The ALJ asked Plaintiff about that notation during the hearing. *See id.* at 34-36. The ALJ summarized the hearing testimony in the decision, explaining that at the hearing, Plaintiff denied ever being off of her medications. Plaintiff "stated, argumentatively, that the consultive examiner report was wrong and she denied telling the consultative examiner she was off one or more of her medications or she could not afford her medications, which is not credible." *Id.* at 17. The ALJ explained that the consultative report "was quite specific in relating that [Plaintiff] had stopped taking medications due to financial difficulty and there is no reasonable explanation for why the examining physician would make up such a thing in such detail." *Id.*

6

The ALJ also discussed medical records from an emergency room visit in October 2009 in which Plaintiff complained of feelings of dizziness and lightheadedness. *See id.* at 18. Those records state that Plaintiff reported she was not taking her blood pressure medication because it was too strong and she was all out of her prescribed medications. *See id.*; *see also id.* at 269. In his decision, *see id.* at 18, the ALJ contrasted medical records from September 2009 noting that Plaintiff's blood pressure medications had changed, but she had not filled the new prescription yet, *see id.* at 309, and from May of 2009 noting that Plaintiff told her treating physician that she was unable to afford her medications, *see id.* at 215, with those from October of 2009 and February of 2010 when she reported that she was taking her medications, *see id.* at 229, 253, 335, 388.

According to the ALJ, "[t]he medical record further shows that when [Plaintiff] was compliant on medications her condition improved." *Id.* at 18. The ALJ concluded that "the RFC is very generous because [Plaintiff] has non-compliance which is evident in the medical evidence of record and her credibility is low in her testimony." *Id.*[1]

The Court, after reviewing the ALJ's decision as a whole, concludes that the ALJ did not base the denial of benefits on Plaintiff's noncompliance with taking her medication but, instead, found that such noncompliance undermined Plaintiff's credibility. *See Johnson v. Commissioner of Social Sec. Admin.*, No. 3:11-cv-3126-L-BF,

---

[1] The ALJ's residual functional capacity ("RFC") finding was that Plaintiff could sustain competitive employment while lifting or carrying twenty pounds occasionally, ten pounds frequently, standing and/or walking for six hours out of an eight hour workday, and sitting for six hours out of an eight hour workday and that Plaintiff had the ability to climb (ramps, stairs) occasionally, must avoid climbing ladders, ropes, or scaffolds, must avoid balancing while standing, hazards, and working in concentrated exposure to temperature extremes. *See* Tr. at 16.

2013 WL 632104, at *20-*21 (N.D. Tex. Feb. 4, 2013), *rec. adopted*, 2013 WL 628561 (N.D. Tex. Feb. 20, 2013). Because the case does not fall squarely under SSR 82-59, "any lack of notice and opportunity required by that ruling does not give rise to reversible error." *Barrance,* 2013 WL 1842282, at *7 (citations omitted).

Plaintiff next contends that the ALJ's credibility determinations were not supported by substantial evidence, led to a RFC that is not reflective of her actual limitations, and were prejudicial. *See* Dkt. No. 17-1 at 3, 15-20; Dkt. No. 20 at 6-8. In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

(7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). However, "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for

denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. *See* Tr. at 17. Plaintiff argues that the ALJ erred in assessing her credibility by mischaracterizing her activities of daily living, improperly relying on noncompliance, and ignoring treatment records explaining the medical basis for some of her alleged limitations. *See* Dkt. No. 17-1 at 3, 15-20.

The ALJ found that Plaintiff described daily activities that were not limited to the extent that one would expect given her complaints of disabling symptoms and limitations. *See* Tr. at 18. The ALJ noted Plaintiff's testimony that she has lived alone for ten years and noted that there was no evidence that she required help to maintain her residence. *See id.* at 18, 46, 146. The ALJ further noted that Plaintiff is able to clean her house; that she does laundry, ironing, and housekeeping; that she has no problems with personal care; and that her hobbies include sewing, going to church on a regular basis, and watching television. *See id.* at 18, 46, 145-47. Based in part on these facts, the ALJ concluded that Plaintiff "is able to perform at least light work if fully compliant with prescribed medication." *Id.* at 18.

Plaintiff argues that the ALJ ignored the limited nature of her daily activities and implied that she was able to perform those activities on an unlimited basis. *See* Dkt. No. 17-1 at 17-20; Dkt. No. 20 at 7. Plaintiff claims the ALJ failed to consider

evidence that it takes her up to two hours to prepare meals, *see* Tr. at 145; she has problems walking, standing, squatting, and climbing and has to "push" herself where she needs to go, *see id.* at 45-46, 148; needs to elevate her legs frequently due to pain and swelling, *see id.* at 44, 152; and has difficulty bathing and putting on pants and stockings, *see id.* at 155; and that it takes her a long time to clean and take care of her personal needs, *see id.*

The ALJ characterized Plaintiff's hearing testimony as including "extreme claims" concerning her leg pain and swelling but concluded that the medical evidence did not indicate any medical reason for the level of pain and swelling alleged. *See id.* at 18. At the administrative hearing, Plaintiff testified that she is precluded from work due to problems with her legs, including swelling of her legs. *See id.* at 16, 34. She testified that she has joint pain from her hip down to her toes, *see id.* at 16, 37; she has diabetes, which is well-controlled by oral medication, *see id.* at 16, 36-37; she has balance problems, which have caused her to fall five times in the last year, *see id.* at 16, 40-43; she has difficulty standing, walking, and getting up from bending, *see id.* at 16, 37, 45; and her medications make her drowsy, so she naps during the day, *see id.* at 16, 44-45.

Furthermore, as discussed above, the ALJ considered Plaintiff's testimony that she takes all of her medications and never stopped taking them and Plaintiff's strong denials concerning noncompliance, which directly contradicted evidence in the medical records from several different health care providers noting that she was noncompliant with her prescribed medications. *See id.* at 17-18, 34-36. The ALJ may consider inconsistencies between Plaintiff's testimony and the medical evidence in evaluating

Plaintiff's credibility. *See Hernandez v. Astrue*, 278 F. App'x 333, 340 (5th Cir. 2008); *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990).

In addition to Plaintiff's testimony, the ALJ considered objective medical evidence. Both Plaintiff and the Commissioner point to the consulting physician's report, which is also referred to in the ALJ's decision, to support their credibility arguments. *See* Dkt. No. 17-1 at 16-17; Dkt. No. 19 at 15-16; Dkt. No. 20 at 6-7; Tr. at 17. The consulting physician found that Plaintiff exhibited normal gait, normal station, and no ataxia. Plaintiff was able to stand on heels and toes and bend and get back up without difficulty. However, she was not able to squat and get back up without difficulty and had difficulty getting on and off the exam table. Her straight leg raising test was negative, and she had bilateral symmetry of length, alignment, and position. *See* Tr. at 216. Plaintiff had knee crepitations but normal range of motion in her lower extremities and swelling in both legs. *See id.* at 217. The consulting physician diagnosed Plaintiff with bilateral leg pain caused by deep vein thrombosis. *See id.*

The ALJ also considered the testimony of the vocational expert. When presented with the limitations that Plaintiff claimed, including the need to elevate her legs for four hours out of an eight hour work day and take an hour long nap during the workday, the vocational expert opined that Plaintiff could not perform any type of work. *See id.* at 54-58. However, when presented with the limitations that the ALJ ultimately adopted in the RFC, the vocational expert opined that Plaintiff was capable of performing semi-skilled light work, including her past relevant work as a gauge assembler.

The Court concludes that the ALJ – who had an opportunity to observe Plaintiff, cited to the applicable regulations, and summarized the evidence – articulated legitimate reasons for finding that Plaintiff's testimony was not credible. The ALJ considered Plaintiff's subjective complaints but ultimately determined that they were inconsistent with and not supported by the objective medical evidence and other evidence of record.

On this record, the Court concludes that there is substantial evidence to support both the ALJ's assessment of Plaintiff's credibility and RFC findings.

## Conclusion

The hearing decision is affirmed in all respects.

DATED: August 21, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE